IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 1:98-cr-00019-MP-AK

ROBERT PETRIE,

    Defendant.
_____/

# O R D E R

This matter is before the Court on Doc. 1502, Report and Recommendation of the Magistrate Judge, which recommends that Defendant's Third Amended Motion to Vacate, Doc. 1457, be denied. The Magistrate Judge filed the Report and Recommendation on Friday, June 15, 2007. The parties have been furnished a copy of the Report and have been afforded an opportunity to file objections. Pursuant to Title 28, United States Code, Section 636(b)(1), this Court must make a *de novo* review of those portions to which an objection has been made.

Defendant Robert Petrie was charged with one count of conspiracy to commit money laundering to promote wire fraud, in violation of 18 U.S.C. § 1956(h). Proceeding to trial, Defendant was found guilty of the offense by a jury, and sentenced to 188 months imprisonment. The sentence and conviction were affirmed by the Eleventh Circuit on appeal. In his third amended motion to vacate, filed under 28 U.S.C. § 2255, Defendant Petrie argues that his conviction was obtained in violation of the Ex Post Facto Clause, that the superseding indictment was defective, that his sentence was based upon conduct that occurred outside the effective date of the money laundering statute, that his counsel was ineffective, and that his sentence violates <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u>. The Magistrate's Report finds that each claim is without merit, and recommends that Defendant's motion to vacate be denied. Defendant

Petrie has filed objections to the Magistrate's Report. Doc. 1521. Although Defendant previously requested, and was granted, extensions of the filing deadline, he has failed to meet the extended deadline. Defendant requests leave to file his objections out of time, stating that his counsel experienced computer issues and medical problems that prevented him from timely filing the objections. Doc. 1522. In an abundance of caution, the Court grants Defendant's motion to file out of time, and will consider Defendant's objections.

### A. *Violation of the Ex Post Facto Clause*

In his first objection, Defendant Petrie states that the Court failed to instruct the jury on the effective date of the statute criminalizing conspiracy to launder money, and that the Government was required to prove that the Defendant was a member of a conspiracy which existed after October 31, 1992–the effective date of the statute. The superseding indictment charged Defendant with conspiring to commit money laundering to promote wire fraud beginning on or about January 1, 1991, through April 27, 1999, and alleged that Defendant committed overt acts in furtherance of the conspiracy on February 15 and August 25, 1994. While acknowledging that a defendant may be convicted for a conspiracy in which acts in furtherance of it are committed both before and after the criminalization of the conspiracy, Mr. Petrie argues that in his case the jury should have been instructed as to the effective date of the statute, and then required to find that the conspiracy existed after the effective date of the money laundering statute. Failure to do this, Defendant argues, violated the Ex Post Facto Clause.

The Ex Post Facto Clause of the Constitution, Art. I, § 9, cl. 3, prohibits Congress from enacting legislation that retroactively punishes acts which were innocent when done. This is an express limitation upon the powers of the legislature, but is included as a right that is protected

against judicial action by the Due Process Clause of the Fifth Amendment.  See U.S. v. Brown, 555 F.2d 407, 419 (5th Cir. 1977).  In Brown, the defendants were charged with engaging in a pattern of racketeering activity, as well as conspiracy to commit acts of racketeering.  On appeal, the conspiracy convictions were set aside because "the appellants were indicted and tried for conduct which occurred several years prior to the enactment of a statute which made it unlawful."  Id.  Although the jury instructions in Brown failed to advise the jury of the effective date of conspiracy statute, or that a verdict of guilty could not be returned unless the Government demonstrated the existence of a conspiracy after the effective date, the court made clear that it was the indictment itself that violated due process.  "In sum*, the indictment was constitutionally deficient*, and that basic, underlying defect was not cured by the trial judge in his instructions to the jury."  Id. at 421 (emphasis added).

In this case, *every* overt act charged in the indictment occurred after the effective date of 18 U.S.C. § 1956(a)(1)(A)(I).  Unlike Brown, where the charged acts occurred prior to the effective date, here the indictment was not constitutionally deficient.  The jury instructions in Brown allowed the retroactive application of a federal criminal statute, and permitted the jury to posit guilt solely on the basis of conduct that did not constitute a federal crime when it was done.  By contrast, the overt acts alleged in the instant indictment and proven at trial required the jury to find guilt based only on activity encompassed within the statute at issue.  Furthermore, in the *ex post facto* analysis, "[t]he critical question is whether the law changes the legal consequences of acts *completed* before its effective date."  Weaver v. Graham, 450 U.S. 24, 31, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981)(emphasis added).  Although the conspiracy in the instant case was alleged to have begun prior to the effective date of the statute, the indictment and the evidence

showed that it was not completed until after the effective date–when the overt acts in furtherance of the conspiracy occurred.  The evidence offered at trial supported the Government's contention in its indictment that the scheme was ongoing through 1999.  Because the jury had sufficient evidence to find that Defendant committed an overt act in furtherance of the conspiracy after the effective date of the statute, the application of § 1956 to Mr. Petrie's conviction did not violate the Ex Post Facto Clause.  See U.S. v. Paradies, 98 F.3d 1266, 1284 (11th Cir. 1996).

### B. Illegal Sentence under the Sixth Amendment

After being found guilty of the charged offense, Defendant Petrie was sentenced to 188 months incarceration.  In his second objection, Defendant contends that the Magistrate erred in finding that this sentence was imposed in a constitutional manner.  Specifically, Defendant Petrie argues that, pursuant to the Sixth Amendment, he has a right to a jury determination of the factors which increased his maximum punishment; that is, a jury must decide beyond a reasonable doubt the amount of loss or funds laundered.  The Magistrate found that since Defendant was sentenced below the statutory maximum, the Sixth Amendment was not implicated, and that Apprendi, Blakely, and Booker are not applicable on collateral review anyway.  The Eleventh Circuit addressed this very issue, stating that "Petrie's 188-month sentence is less than the 20-year statutory maximum for conspiracy to launder money.  Therefore, Apprendi is not applicable in this case." U.S. v. Petrie, 302 F.3d 1280, 1290 (11th Cir. 2002)(internal citation omitted).

The Supreme Court has made clear that under the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). If the sentence is within the sentencing range supported by the jury's findings, then the Sixth Amendment is not violated, since the sentence is not increased beyond the statutory maximum penalty. "[T]he 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. 296, 303, 124 S.Ct. 2531, 2537 (2004).

Although this language would make it appear that under the Sixth Amendment, a jury would have to determine facts such as monetary calculations and role adjustment factors, which enhanced the sentencing range, the Supreme Court in U.S. v. Booker, 543 U.S. 220, 233, 125 S.Ct. 738, 750 (2005), declined to extend this reasoning into the federal Sentencing Guidelines. In Booker, the Supreme Court held that the Sentencing Guidelines violated the Sixth Amendment because they *mandated* that a judge impose a sentence based on facts not found by a jury. "[T]he Guidelines . . . read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts . . . would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." Booker, 543 U.S. at 233, 125 S.Ct. at 750. After finding that the Guidelines violated the Sixth Amendment, the second part of the Booker opinion remedied the constitutional violation by making the Guidelines discretionary–allowing judges to base sentences on facts not found by a jury. In rejecting a sentencing system where factors to be considered in imposing a sentence would have to be determined by a jury, the Supreme Court gave the following example to support the use of the current Guideline system as a discretionary guide:

> Consider, too, a complex mail fraud conspiracy where a prosecutor may well be uncertain of the amount of harm and of the role each indicted individual played until after conviction–when the offenders may turn over financial records, when it becomes easier to determine who were the leaders and who the followers, when victim interviews are seen to be worth the time. In such a case the relation between the sentence and what actually occurred is likely to be considerably more distant under a system with a jury trial requirement patched onto it than it was even prior to the Sentencing Act, when judges routinely used information obtained after the verdict to decide upon a proper sentence.

Id. at 253. As it stands, Booker "requires judges to take account of the Guidelines with other sentencing goals," including 18 U.S.C. § 3553(a), with appellate review under an "unreasonableness" standard.

The money laundering statute under which Defendant was convicted sets the statutory maximum sentence at a "fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both." 18 U.S.C. § 1956 (a)(1). The discretionary sentencing system established by Booker would allow a district judge–considering facts beyond those found by the jury–to sentence a defendant under this statute anywhere up to twenty years, based on the judge's perception of such factors as the severity of the crime, the defendant's prospects for rehabilitation, the effects on the victims, the defendant's ties to the community or family responsibilities, or whatever other factors he deems relevant. "[W]hen a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Booker, 543 U.S at 233, 125 S. Ct. at 750. Indeed, Booker does nothing to protect defendants from receiving enhanced sentences based on judicial findings that they committed uncharged offenses, or even offenses for which they were acquitted by the jury. See, e.g., United States v. Watts, 519 U.S. 148, 157, 117 S.Ct.

633, 136 L.Ed.2d 554 (1997). Any alleged constitutional violation in sentencing would not be that a jury did not determine facts that enhanced Defendant's sentence, but that the Court was bound under the Guidelines to impose a sentence regardless of the facts found by the jury. Under the current Guidelines, as excised by Booker, Defendant Petrie could be sentenced up to twenty years imprisonment, subject to appellate review for unreasonableness. Therefore, the Court agrees with the Magistrate and the Eleventh Circuit that because Mr. Petrie was sentenced below the statutory maximum, Apprendi is not applicable in this case.

As to Defendant Petrie's claim that Booker should be applicable on collateral review, the Court finds that this issue has been addressed by the Eleventh Circuit. While the Court in Booker explicitly applied its holdings to "all cases on direct review," it made no explicit statement of retroactivity to collateral cases. Id. at 268. The general rule is that new rules of criminal procedure "should always be applied retroactively to cases on direct review, but that generally they should not be applied retroactively to criminal cases on collateral review." Teague v. Lane, 489 U.S. 288, 303 (1989). A new rule of constitutional law will be applied, however, if it is a "substantive or a watershed rule of procedure that affects the fundamental fairness and accuracy of the criminal proceeding." Guzman v. United States, 404 F.3d 139, 140 (2d Cir. 2005)(internal quotation marks omitted). The Eleventh Circuit has held that "Booker's constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review." Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005).

Defendant contends that Varela is factually inapplicable to his case. In Verela, the defendant argued on collateral review that pursuant to Apprendi, the district court wrongly

determined his sentence based on a drug quantity neither alleged in the indictment, nor proved to a jury beyond a reasonable doubt.  Relying on Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), the Eleventh Circuit concluded that the rule set forth in Booker is not a "watershed rule of criminal procedure" to be applied retroactively, and affirmed the denial Verela's habeas petition.  Defendant Petrie argues that because he raised the Sixth Amendment issue on direct review, he is not barred from raising the same issue in a habeas corpus proceeding.  Although Defendant cites numerous cases to show that the holding in Booker was foreshadowed by prior Supreme Court rulings, this does not change the fact it was decided after Defendant's conviction became final.  Therefore, the Court agrees with the Magistrate that any alleged error under Booker is not cognizable on collateral review.

### C. *Ineffective Assistance of Counsel*

Finally, Defendant Petrie objects to the Magistrate's findings that trial counsel rendered constitutionally reasonable assistance.  As the Magistrate points out, to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  Strickland v. Washington, 466 U.S. 668, 686 (1984). There is a strong presumption that counsel's conduct falls within the "wide range of reasonable professional assistance." Waters v. Thomas, 46 F.3d 1506, 1511-12 (11th Cir. 1995) (en banc) (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052).  In order to overcome the presumption that counsel's performance was reasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001)(emphasis omitted).  In his objections, Defendant argues that his counsel

was ineffective by failing to request an instruction with regard to the *ex post facto* aspect of the money laundering conspiracy statute, and by failing to challenge an allegedly biased juror.

### 1. Failure to Argue Violation of the Ex Post Facto Clause

Defendant Petrie contends trial counsel provided constitutionally deficient assistance by not arguing that the indictment, conviction, and sentence violated the Ex Post Facto Clause. In his affidavit submitted in opposition to this § 2255 petition, trial counsel stated that he failed to raise the *ex post facto* argument because he believed that "such argument was frivolous and not supported by the law." Doc. 1465, Ex. F. As the Court has explained previously, the indictment charged Defendant with conduct made criminal after the effective date of the conspiracy statute, and the jury had ample evidence to convict Defendant of this conduct. Furthermore, under Booker, the Court could base Mr. Petrie's sentence, in part, upon conspiratorial conduct which occurred prior to the amendment of the money laundering statute. See United States v. Regan, 989 F.2d 44, 48 (1st Cir. 1993)(finding no *ex post facto* violation where "the prior acts of embezzlement were 'relevant conduct' that would enhance defendant's sentence for the embezzlements that occurred after the guideline increase even if he had been convicted *only* on the latter counts.") Therefore, a reasonable lawyer could have chosen not to argue any *ex post facto* violation, and even if this decision was unreasonable, Defendant cannot show any resulting prejudice. Accordingly, trial counsel was not constitutionally ineffective by failing to raise an *ex post facto* argument.

### 2. Failure to Strike an Allegedly Biased Juror

In his next alleged instance of ineffective assistance, Defendant points to the selection of Randall Winegardner, who advised the Court that he had friends who had lost all of their life

savings in a money scam.  Trial counsel stated that he consulted with Mr. Petrie, as well as a local attorney, Harry Averell, retained by the defense as a jury consultant, and chose not to exercise a peremptory challenge against Juror Winegardner.  Trial counsel characterized this as a strategic and tactical decision, based on Mr. Winegardner's age, business sophistication, demeanor, and body language.  Furthermore, counsel feared "that if Juror Winegardner were stricken, the next few jurors in line were not good for the defense."  Doc. 1465, Ex. F.  Mr. Winegardner was eventually selected as the foreperson of the jury, which found Defendant guilty of the charged offense.  In order to show that counsel's failure to strike this juror amounted to ineffective assistance, Defendant must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Lockhart v. Fretwell, 506 U.S. 364, 369-70, 113 S.Ct. 838, 8442-43 (1993).

   Defendant had the assistance of not only a lawyer, but a defense team consisting of a licensed private investigator and a jury selection consultant, with whom he consulted regarding the selection of jurors.  Trial counsel stated that the defense team agreed with his decision not to strike Juror Winegardner, but Defendant has filed an affidavit of the jury consultant, Harry Averell, which states he opposed the selection of the juror.  The decision in this case whether to exercise a peremptory challenge was inherently a judgment call.  "It is important to note that judicial scrutiny of an attorney's performance is appropriately highly deferential because the craft of trying cases is far from an exact science; in fact, it is replete with uncertainties and obligatory judgment calls."  Bolender v. Singletary, 16 F.3d 1547, 1557 (11th Cir.1994).  Juror Winegardner expressed no bias that would require him to be stricken for cause.  Counsel weighed the risks of exercising a peremptory challenge, and concluded that a person of similar

age to the Defendant with investment experience would be a more fair juror than a person with connections to law enforcement. "A tactical decision is ineffective only 'if it was so patently unreasonable that no competent attorney would have chosen it.'" Holladay v. Haley, 209 F.3d 1243, 1253 n. 6 (11th Cir.2000) (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir.1983)). The Court cannot say that no competent attorney would make the same tactical choice. Therefore, the Court agrees with the Magistrate that because counsel did not act unreasonably by allowing Mr. Winegardner to be seated as a juror in this case, he was not ineffective in this regard.

Therefore, having considered the Report and Recommendation, and the objections thereto, I have determined that it should be adopted. Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant Petrie's Motion to File Out of Time, Doc. 1522, is GRANTED.

2. The Report and Recommendation of the Magistrate Judge is adopted and incorporated herein.

3. Defendant Petrie's Third Amended Motion to Vacate, Doc. 1457, is DENIED.

**DONE AND ORDERED** this  *27th* day of September, 2007

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge